# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California



FILED
JUN 2 5 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
  DEPUTY CLERK

United States of America )
v. )
) Case No. 5:19-mj-00028-JLT
)
)
LEONARDO VELAZQUEZ-MARTINEZ, )
JOSEPH ANDRADE )
)
*Defendant(s)*

## AMENDED CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **June** ~~July~~ 24, 2019 in the county of Kern in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC § 846, 841(a)(1), (b)(1)(A) | Conspiracy to possess with intent to distribute cocaine and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Trent O'Neill, Special Agent
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/25/19

_____
*Judge's signature*

City and state: Bakersfield, CA

Jennifer L. Thurston, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT FOR ARREST WARRANTS FOR Joseph ANDRADE AND Leonardo VELAZQUEZ-Martinez

I, Trent O'Neill, Special Agent, U.S. Department of Justice, Drug Enforcement Administration (DEA), being duly sworn, state:

## I. AFFIANT'S TRAINING AND EXPERIENCE

1. I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and as such I am empowered under Title 21, United States Code, § 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure and arrest warrants I have been employed as a Special Agent with the Drug Enforcement Administration since August, 2004, and am presently assigned to the Drug Enforcement Administration Resident Office in Bakersfield, California. I have successfully completed a sixteen (16) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841 and 846. I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by narcotics distributors.

3. In addition, I have completed various training provided by the DEA and local law enforcement agencies, including, but not limited to, training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to, methamphetamine, heroin, cocaine, and marijuana. This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances, as well as its precursors and chemicals used in the manufacturing process. I am familiar with narcotics traffickers' methods of operation, including the distribution, storage,

1

1  manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics
2  trafficking. I have assisted in the execution of multiple federal and state narcotics search
3  warrants that resulted in the arrest of suspects and seizure of narcotics and narcotic proceeds.
4    4.  I have participated in narcotics investigations either as a case agent or in a
5  supporting role. I have debriefed defendants, informants, and witnesses who had personal
6  knowledge regarding narcotics trafficking organizations. Additionally, I have participated in
7  many aspects of drug investigations, including, but not limited to, undercover operations,
8  physical and electronic surveillance, and arrests. I have conducted and been involved in
9  numerous investigations regarding the unlawful manufacture, possession, distribution, and
10 transportation of controlled substances, as well as conspiracies associated with criminal
11 narcotics, in violation of 21 U.S.C. §§ 841(a)(1).

## II. NATURE OF COMPLAINT AND SEARCH WARRANT

  5.  This affidavit is submitted in support of a request that a complaint be issued for Joseph ANDRADE (ANDRADE) (Year of Birth: 1981) and Leonardo VELAZQUEZ-Martinez (VELAZQUEZ) (Year of Birth: 1969) charging them with conspiracy to possess with the intent to distribute methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(A). This affidavit does not purport to contain all the facts related to this investigation, but only those facts necessary to establish probable cause with respect to the aforementioned offense.

## III. PROBABLE CAUSE

A.  **BACKGROUND INFORMATION**

  6.  In or about April 2019, DEA Los Angles DEA Special Agent (SA) Frank Marino and Detectives from the Baldwin Park Police Department (BPPD) received information from a Baldwin Park Confidential Source (CS)[1] that Joseph ANDRADE who is currently employed by

---

[1] The CS is cooperating with the hope of leniency on a previously-imposed federal drug trafficking sentence.

the California Department of Corrections as a Correctional Officer at Wasco State Prison was interested in purchasing multi-pound quantities of crystal methamphetamine and multi-kilogram quantities of cocaine. The DEA Bakersfield Resident Office ultimately took over the investigation, as ANDRADE resides in Kern County.

7. On June 18, 2019, DEA Bakersfield Task Force Officer (TFO) Jose Perez acting in an undercover capacity placed a recorded phone call to ANDRADE on his previously identified phone number, 661-348-1337. ANDRADE did not initially answer the phone call. However, ANDRADE later returned the call to TFO Perez. During that conversation, ANDRADE explained to TFO Perez that he (ANDRADE) wanted to introduce him to his "Uncle" (VELAZQUEZ). ANDRADE further noted that ANDRADE and VELAZQUEZ were looking to purchase approximately 40 pounds of methamphetamine. TFO Perez advised ANDRADE that he would be able to provide the amount of methamphetamine to ANDRADE. ANDRADE advised TFO Perez that he (ANDRADE) and the "uncle" (VELAZQUEZ) would be able to provide the money for the methamphetamine at the time of the transaction.

**B. SURVEILLANCE AND MEET BETWEEN DEA UC, JOSEPH ANDRADE AND VELAZQUEZ**

8. On June 21, 2019, law enforcement personnel with DEA Bakersfield and Bakersfield Police Department conducted an introductory meeting between TFO Perez, ANDRADE, and the "uncle" (VELAZQUEZ) in Kern County, California. The intent of the meeting was to build familiarity and trust to facilitate the negotiated methamphetamine transaction. During the meeting, SA Freytag and TFO Scott Merritt observed a previously identified dark gray Chevrolet Tahoe (California plate KWEENB) arrive at the location.[2] ANDRADE exited the driver's seat and VELAZQUEZ exited the right front passenger seat. The registered owner of the Tahoe is listed as Joseph ANDRADE and Berenice ANDRADE with no

---

[2] DEA Bakersfield had previously conducted surveillance of ANDRADE and recognized the Tahoe from previous surveillance operations

3

listed address, due to his employment by the California Department of Corrections. TFO Perez confirmed the identities of ANDRADE and VELAZQUEZ based on their respective California Department of Motor Vehicles (DMV) database photos.

9. TFO Perez then met with both ANDRADE and VELAZQUEZ. This meeting was video and audio recorded. Your affiant has since spoken with TFO Perez regarding this meeting and the following is a summary of the events of the meeting based on my discussion with TFO Perez. At the outset of the meeting, ANDRADE introduced VELAZQUEZ as his uncle. VELAZQUEZ told TFO Perez he was interested in purchasing the 40 pounds of "ventanas" (Spanish for windows) which I know, based on my training, experience and conversations with other law enforcement officers, is coded language for crystal methamphetamine. VELAZQUEZ advised he had money for 15 pounds and his friend (unidentified/undetermined) needed 25 pounds. VELAZQUEZ explained to TFO Perez that he wanted to establish a "line" (drug route) to Minnesota. VELAZQUEZ advised he has "people" (members of a DTO) in Minnesota he is working with. VELAZQUEZ told TFO Perez he lives about two hours outside of Minnesota. As VELAZQUEZ and TFO Perez continued negotiating the future drug transaction, VELAZQUEZ told TFO Perez he had a different narcotic source of supply in Fresno, who is offering him pound quantities of crystal methamphetamine at $1,100 per pound. TFO Perez told VELASQUEZ he could sell him the pounds of methamphetamine at $1,150 per pound and he would bring them to Bakersfield for VELAZQUEZ. As VELAZQUEZ continued to negotiate, VELAZQUEZ advised TFO Perez he was interested in kilos of cocaine. TFO Perez asked VELASQUEZ how many kilos he was interested in purchasing along with the methamphetamine. VELAZQUEZ told TFO Perez he could get two kilos of cocaine. TFO Perez told VELAZQUEZ if he purchased both the methamphetamine and cocaine, he (TFO Perez) would lower the price of the methamphetamine to $1,100 per pound and the price of cocaine to $22,000 per kilogram. VELAZQUEZ agreed to the prices for both the methamphetamine and cocaine and requested the deal be done on Monday, June 24, 2019. TFO Perez asked VELAZQUEZ for his phone number in order to be able to communicate with him. VELAZQUEZ agreed, and ANDRADE said he

4

would send TFO Perez the phone number. It should be noted that during the meeting, VELAZQUEZ did all the negotiating, but ANDRADE was present and listening to the conversation. The three were seated at a table together. A few minutes after all parties left the meeting, TFO Perez received a text message from ANDRADE providing VELAZQUEZ's phone number of 661-431-5477.

10. After the meeting concluded, law enforcement personnel observed ANDRADE re-enter the driver seat of the Tahoe and VELAZQUEZ re-enter the right front passenger seat. ANDRADE then drove from the area. Law Enforcement personnel then attempted to maintain surveillance on the Tahoe. ANDRADE exhibited driving patterns consistent with counter surveillance techniques, including but not limited to irregular routing, frequent / irregular lane changes, irregular speed variations, and erratic / irregular roadway transitions.

11. After leaving the meeting with TFO Perez, ANDRADE and VELAZQUEZ traveled to Kern Schools Federal Credit Union (4530 Ming Avenue, Bakersfield CA). VELAZQUEZ exited the Tahoe and entered the banking center. A short time later, VELAZQUEZ exited the bank and returned to the Tahoe. DEA TFO Peery observed VELAZQUEZ walking back to the Tahoe and it appeared VELAZQUEZ was counting money. VELAZQUEZ re-entered the right front seat of the Tahoe and ANDRADE drove from the area. ANDRADE and VELAZQUEZ then traveled to a Hertz Rental Car (1700 24th Street, Bakersfield). VELAZQUEZ exited the Tahoe and entered the rental facility. A short time later, VELAZQUEZ exited the rental facility and returned to the Tahoe. VELAZQUEZ appeared to be holding paperwork as he walked back to the Tahoe. Once again, ANDRADE drove from the area, with VELAZQUEZ in the right front passenger seat. Due to ANDRADE's erratic driving pattern, surveillance units were unable to maintain surveillance on the Tahoe. It was last seen traveling southbound on South Union Avenue, in the area of Truxton Avenue. Surveillance units were unable to re-obtain the Tahoe and surveillance was terminated.

C. **ARREST OF ANDRADE AND VELAZQUEZ ON JUNE 24, 2019.**

15. On June 24, 2019, TFO Perez made several telephonic communications with

5

1  ANDRADE confirming that ANDRADE and VELAZQUEZ planned to meet with TFO Perez in
2  order to purchase narcotics. At approximately 4:39 p.m., TFO Merritt observed the previously
3  identified dark grey Tahoe displaying the license plate "KWEENB" arrive at the predesignated
4  meet location in Kern County, California.

5  16. TFO Perez observed ANDRADE exit the driver seat and VELAZQUEZ exited
6  the front passenger seat. VELAZQUEZ told TFO Perez "it's right there" pointing to a grocery
7  bag on the passenger side floorboard. TFO Perez asked "how much." VELAZQUEZ stated that
8  it was "88." TFO Perez looked inside the bag and observed multiple bundles of U.S Currency
9  with various denominations. VELAZQUEZ advised that each packet contained $5,000.

10  17. TFO Perez gave the predesignated arrest signal and ANDRADE and
11  VELAZQUEZ were taken into custody without incident. ANDRADE was found to be in
12  possession of a .357 magnum secreted between the driver's seat and center console.
13  VELAZQUEZ was found to be in possession of a loaded Smith and Wesson SD9 VE 9mm semi-
14  automatic pistol secreted in his waistband.

15  ████████████████████████████████████████
16  ████████████████████████████████████████

17  19. During the post arrest interview of VELAZQUEZ, agents read VELAZQUEZ his
18  Miranda rights from DEA form 13a, and when asked if he wanted to answer some questions,
19  VELAZQUEZ responded he wanted to talk to an attorney. At that time, agents discontinued the
20  interview.

21  20. ████████████████████████████████████
22  ████████████████████████████████████████
23  ████████████████████████████████████████
24  ████████████████████████████████████████
25  ████████████████████████████████████████
26  ████████████████████████████████████████
27  ████████████████████████████████████████
28

1
2
3
4
5
6
7

21. SA Andrew Freytag conducted a criminal history check on VELAZQUEZ. VELAZQUEZ appears to be a United States citizen, with an extensive narcotic criminal history. The following is a non-inclusive summary of VELAZQUEZ's previous arrests/convictions:

    a. Arrest (ND0180000) from Grand Forks (North Dakota) Sheriff Department (10-01-1998)

        i. Delivery of Cocaine (1 count / Felony A)

        ii. Delivery of Methamphetamine (1 count / Felony A)

        iii. Plead guilty (03-31-1999)

            1. Sentenced to 7 years jail (03-31-1999)

            2. Released on parole/probation (03-31-2000)

    b. Arrest (1488060-029861-01) from Kern County (California) Sheriff Department (06-06-2001)

        i. 12316(b)(1)PC – Prohibited own/etc ammo/etc (2 counts) (Felony)

        ii. 11351 HS – Possess/purchase for sale narc/controlled sub (Felony)

        iii. 11378 HS – Possess controlled substance for sale (Felony)

        iv. 12021(a)(1) PC – Felon/etc possess firearm (3 counts) (Felony)

        v. 12020(a) PC – Possess/mfg/sell dangerous weapon/etc (Felony)

        vi. 273(a) PC – Child cruelty: poss injury/death (2 counts) (Felony)

        vii. Conviction (08-30-2001)

            1. Sentenced to 12 years prison (09-14-2001)

22. Your affiant conducted a criminal history check on ANDRADE. There is no known arrest/convictions for ANDRADE.

### IV. CONCLUSION

37. Based on my training, experience, and the information contained within this affidavit, I believe that probable cause exists to believe Joseph ANDRADE and Leonardo VELAZQUEZ conspired with each other and others unknown, to possess with intent to distribute methamphetamine and cocaine, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A).

Trent O'Neill
Special Agent
Drug Enforcement Administration

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 25th DAY OF JUNE 2019.

Honorable Jennifer L. Thurston
United States Magistrate Judge
Eastern District of California

Reviewed as to form:

/s/ Angela Scott
Angela Scott
Assistant United States Attorney

8

# United States v. LEONARDO VELAZQUEZ-MARTINEZ, et al.
## Penalties for Criminal Complaint

**Defendants:**   LEONARDO VELAZQUEZ-MARTINEZ
JOSEPH ANDRADE

VIOLATION:   21 U.S.C. § 846, 841(a)(1), (b)(1)(A) – Conspiracy to distribute cocaine and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine

PENALTIES:   Maximum term of imprisonment: life
Mandatory Minimum term of imprisonment: 10 years
Fine: Not more than $10,000,000
Maximum term of supervised release: life
Minimum term of supervised release: five years